**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DANIEL HALLER, | Case No. 1:11-cv-291 |
| Plaintiff, | |
| vs. | Beckwith, J.<br>Bowman, M.J. |
| THOMAS LIPPS, et. al, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Plaintiff, proceeding pro se, initiated this action on May 5, 2011 by filing a complaint against Hamilton County Magistrates Michael Backman and Denis Holtmeier; Hamilton County Judges Thomas Lipps and Ralph Winkler; Hamilton County Appellate Judges Lee H. Hildebrandt, Penelope R. Cunningham, Patrick Dinkelacker, J. Howard Sunderman, and Sylvia S. Hendon (the "Judicial Defendants"); the Ohio Supreme Court; the Hamilton County Job and Family Services ("HCJFS"); Hamilton Country Board of Commissioners ("HCBC"); and the State of Ohio. (Doc. 1, pp. 7-12). This matter is before the Court on Defendants' motions to dismiss (Docs. 12, 13, 14), Plaintiff's motion for a jury trial (Doc. 21), and Plaintiff's motion for schedule. (Doc. 22).

Pursuant to local practice, Defendants' motions to dismiss have been referred to the undersigned Magistrate Judge for initial consideration and a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons stated herein, the undersigned recommends that Defendants' motions to dismiss (Docs. 12, 13, 14) be granted and Plaintiff's complaint be dismissed with prejudice. Accordingly, the Court further recommends that Plaintiff's motions for a jury trial (Doc. 21) and for a calendar order (Doc. 22) be denied as moot.

## I. Factual and Procedural Background

On January 20, 2006, pursuant to § 3111 of the Ohio Rev. Code Plaintiff filed a parentage complaint in the Hamilton County Juvenile Court. (Doc. 1, ¶38). Plaintiff alleged that he was the biological father of a child and sought to establish paternity in order to file for custody. *Id.* On March 17, 2006, Hamilton County Magistrate Holtmeier dismissed Plaintiff's complaint without prejudice, finding *inter alia*, that it was in the best interest of the child (who was twelve at the time) for the man she had known as her father her entire life to remain in that capacity. (Doc. 13, Ex. A). In addition, he found that the Domestic Relations Court found that man to be the father of the minor child and the Magistrate properly pointed out that Plaintiff claims to have know he was the father for over 12 years and took no prior steps to establish paternity.

On October 16, 2006, Judge Lipps adopted Magistrate Holtmeier's decision over Plaintiff's objections, finding that Plaintiff's complaint "was not filed in accordance with the administrative requirements in force at the time of the filing, the doctrine of latches requires the dismissal, and the Plaintiff is not in the best interest of the child." *Id.* Plaintiff unsuccessfully appealed to the Ohio Court of Appeals, where Judges Hildebrandt, Cunningham and Dinkelacker affirmed the trial court's dismissal "because Haller had failed to seek an administrative determination of parentage prior to filing his parentage action in juvenile court." (Doc. 12, Attachment, p. 2).

Plaintiff contends that the judges presiding over his parentage complaint suppressed evidence, ignored facts and established law, and failed to conduct an evidentiary hearing to determine the best interest of the child. (Doc. 1, ¶38). More specifically, Plaintiff claims that the presiding judges ignored and suppressed evidence that he filed a paternity motion

with HCJFS prior to filing his patronage complaint in the Hamilton County Juvenile Court. *Id.*

In a separate and unrelated matter, Plaintiff states that he was the defendant in a telecommunication harassment complaint. *Id.* at ¶39. He alleges that "[n]ot only was the evidence ignored by the Magistrate (Michael Bachman), purposefully suppressed by the Trial Judge (Ralph Winkler) and ignored by the Appellate Court (Penelope Cunningham, Patrick Dinkelacker, J. Howard Sundermann, and Sylvia Hendon), but the Laws established for this specific issue were completely ignored." *Id.* Plaintiff further contends that Magistrate Bachman "flat out lied on the bench about the existence of a 6th and 7th floor of the Courthouse where physical evidence does exist, and on appeal to the Judge, Ralph Winkler uttered to his staff that he 'did not want to hear any soap operas today.'" *Id.*

Based on the foregoing, Plaintiff asserts four causes of action in the instant complaint. (Doc. 1, ¶47-¶55). First, under 42 U.S.C. § 1983, Plaintiff alleges a deprivation of his constitutional rights due to all named Defendants' alleged suppression of evidence and ignoring facts made available to them; creating an environment of bias, prejudice and harassment; abuse of process and malicious prosecution; and systematic ignoring of established laws. *Id.* at ¶47-¶52. Second, Plaintiff alleges intentional infliction of emotional distress against Defendants HCJFS and the judges presiding over the above matters. *Id.* at ¶53.

Plaintiff's third and fourth causes of action are alleged against Defendants HCBC, the Supreme Court of Ohio, and the State of Ohio. *Id.* at ¶54, ¶55. Plaintiff contends that these Defendants "were aware or should have been aware of the systematic practice

alleged of Defendants" and alleges negligent infliction of emotional distress, negligent supervision, and promotion of unlawful punitive penalties against them. *Id.*

On May 23, 2011, Defendants Magistrate Holtmeier, HCJFS, and HCBC filed a motion to dismiss. (Doc. 12). Therein, Defendants argue that Magistrate Holtmeier is absolutely immune from liability; that HCBC are non-actors entitled to Eleventh Amendment immunity; and that Plaintiff has not stated a claim upon which relief may be granted against HCJFS. *Id.*

On May 31, 2011, Defendants Magistrate Bachman and Judges Lipps, Winkler, Hildebrandt, Cunningham, Sundermann, and Hendon filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 13). These Defendants argue that this Court lacks jurisdiction over Plaintiff's claims against them; they are absolutely immune from suit; Plaintiff's claims for injunctive and declaratory relief are also barred; and Plaintiff fails to state a claim for which relief can be granted. *Id.*

Defendants the State of Ohio and Ohio Supreme Court also filed a motion to dismiss. (Doc. 14). Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted and, in any event, that Plaintiff's claims against the State of Ohio and Ohio Supreme Court are barred by the Eleventh Amendment. *Id.*

## II. Legal Standard and Analysis

A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002) (explaining that a Rule 12(b)(6) motion may be decided only after establishing subject matter jurisdiction since the Rule 12(b)(6) challenge becomes moot if

the court lacks subject matter jurisdiction), *citing Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction. *Pritchard*, 210 F.R.D. at 592. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citing *Ohio Nat. Life Ins. Co.*, 922, F.2d at 325).

A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the claims. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal

citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

*A. Judicial Defendants*

As argued by several Defendants, (*see* Doc. 13, pp. 7-8), this Court lacks jurisdiction over Plaintiff's claims against the Judicial Defendants under the *Rooker-Feldman* doctrine. (*See* Doc. 13, pp. 7-8).

Under 28 U.S.C. §1257, final judgments of state courts are entitled to receive full faith and credit from federal courts, and lower federal courts lack jurisdiction to review state court decisions. Instead, a review of state court determinations may be obtained only by filing a petition for writ of certiorari in the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The doctrine applies to any case in which a plaintiff attempts to bring an impermissible attack on a state court judgment. The Supreme Court has explained that the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *In re Smith*, 349 F. App'x 12, 14 (6th Cir. 2009) (quoting *Exon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Sixth Circuit has specified that the key inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury which the plaintiff alleges in his or her complaint:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts and independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The doctrine "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case." *Raymond v. Moyer*, 501 F.3d 548, 551 (6th Cir. 2007) (quoting *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003). However, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Tropf v. Fidelity Nat. Title Ins. Co.,* 289 F.3d 929, 937 (6th Cir. 2002) (citing *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir.1998)).

In this instance, Plaintiff has not challenged the constitutionality of any state law or rule, but instead has argued that the adjudication of the above matters under the applicable

laws were themselves unconstitutional.¹ Plaintiff contends that the Judicial Defendants were required to have ordered DNA analysis under Ohio Title 31 based on his claim that he was the child's father (*see* Doc. 16, ¶6), that an evidentiary hearing was needed to determine the best interest of the child (*see* Doc. 1, ¶38), and that all the judges ignored evidence in his favor and established laws applicable to both matters. *Id.* at ¶38-39.

Although Plaintiff contends that the alleged errors resulted in the deprivation of his constitutional rights, "there is no federal jurisdiction when the claim is 'a specific grievance that the law was invalidly-even unconstitutionally-applied in the plaintiff's particular case.'" *Loriz v. Connaughton*, 233 F. App'x 469, 474 (6th Cir. 2007) (quoting *Tropf*, 289 F.3d at 937). Furthermore, the Court finds that Plaintiff has not alleged a source of injury independent of the state court decisions themselves. Plaintiff asserts that his complaint does not ask the Court to reconsider the Hamilton County courts' rulings (*see* Doc. 16, ¶2); however, the injuries alleged all stem from the result of his state court proceedings and his request for relief is predicated on a determination that the Judicial Defendants improperly adjudicated the matters.² In essence, Plaintiff alleges injury to himself and loved ones based on the adverse decisions in the harassment and parentage matters.³

---

¹ Though Plaintiff argues that the complaint seeks to address systematic abuse and constitutional violations (*see* Doc. 16, p. 2, ¶2), he bases this challenge solely on the adjudication of his child custody and harassment cases.

² Plaintiff asks the Court to find that the Defendants "violate[d] all Constitutions, Laws and ethical standards as mentioned [in the complaint] (Doc. 1, ¶64); mandate that the state judiciary make factual determinations prior to trial and adjudication, *id.* at ¶67; mandate that judicial officials "adhere to the Codes of Judicial Conduct, respect all parties without bias, understand that the after-effects of making a judgment does have severe consequences for one, or the other or all partys (sic) that come before the court," *id.* at ¶68; and mandate that the state judiciary base their decisions on applicable law. *Id.* at ¶69.

³ Plaintiff alleges that he "has experienced extreme suffering, grief, severe emotion distress and pain, embarrassment, humiliation and anger and is forced to forever live with the results of such extreme violations." (Doc. 1, ¶44). Additionally, he claims that his family relations have become more complicated and increasingly antagonistic. *Id.*

The Court also finds that Plaintiff's claims against the Judicial Defendants are subject to dismissal because these claims are barred by the doctrine of judicial immunity. That doctrine bars claims for money damages as well as Plaintiff's claims for injunctive and declaratory relief in this case. *See generally Pierson v. Ray*, 386 U.S. 547, 87 S. Ct. 1213 (1967).

The doctrine of judicial immunity applies to § 1983 actions, *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001), and applies even where a judge acts in error, in excess of jurisdiction, in bad faith or maliciously. *Stump v. Sparkman*, 435 U.S. 349 (1978). Additionally, judicial immunity "operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999). However, immunity does not extend to judges who act (1) in a non-judicial capacity or (2) "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citing *Stump*, 435 U.S. at 356-57).

In the instant case, Plaintiff contends that "[b]y engaging in suppressing evidence and by not finding conclusions according to established Laws, the Defendants have stripped themselves from authority, ruling outside the boundaries of their Office and have forever violated Plaintiff's rights to due process and equal protection of the law." (*See, e.g.*, Doc. 1, ¶47).

Plaintiff's allegations neither demonstrate that the judges acted without jurisdiction or acted in a non-judicial capacity. As the Supreme Court noted in *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), "the scope of the judge's jurisdiction must be construed

broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (citation and internal quotation marks omitted). The Judicial Defendants and Magistrate Holtmeier acted within their jurisdiction, *see* Ohio Rev. Code §§ 2151.23 (jurisdiction of juvenile court to consider 3111 action), 2931.03 (jurisdiction of court of common pleas), 2501.02 (jurisdiction of appellate court jurisdiction), and the Court is not persuaded that the alleged constitutional violations deprived them of all jurisdiction, as Plaintiff argues.

Furthermore, the Court is convinced that the adjudication of the parentage complaint and the harassment matter were both judicial in nature and therefore subject to judicial immunity. In determining whether an act is judicial in nature, the Court must assess whether the nature and function of the act was judicial. *Stump*, 435 U.S. at 362; *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997). Whether an act is judicial in nature depends on whether the act is a function normally performed by a judge and whether Plaintiff dealt with the judge in his judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (citing *Stump*, 435 U.S. at 362). In this case, Plaintiff dealt with the Defendant judges in their judicial capacities and the allegations in the complaint all pertain to acts normally carried out by judges in their judicial capacities. Plaintiff's claim that the judges participated in a "conspiracy" against him is likewise barred by judicial immunity. "The rationale of the doctrine of judicial immunity–'the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants'–also is equally applicable to [a party's] charge that in performing their judicial

duties the judges of [a] court were engaging in a conspiracy against [a party]." *Green v. Seymour,* 59 F.3d 1073, 1078 (10th Cir. 1995) (quoting *Pulliam v. Allen,* 466 U.S. 522, 537-38 (1984)).

Accordingly, the Court is without jurisdiction over Plaintiff's claims against the Judicial Defendants and his claims against them should be dismissed.

B.  *State of Ohio and the Ohio Supreme Court*

Plaintiff's claims against the State of Ohio and Ohio Supreme Court must also be dismissed because these Defendants are entitled to Eleventh Amendment immunity.

The Eleventh Amendment prohibits a citizen of a state from suing that state or one of its agencies in federal court unless the state consents to such suit or there is an express statutory waiver of immunity. *Hans v. Louisiana*, 134 U.S. 1 (1890). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts, *see Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 499 (6th Cir. 1982); *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005), and Congress did not "explicitly and by clear language" express its intent to "abrogate the Eleventh Amendment immunity of the States" in enacting Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 341-43, 345 (1979). In addition, "[a] state court is not a "person" for the purposes of 42 U.S.C. § 1983 and hence is not subject to lawsuit under that statute." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997).

Finally, to the extent that Plaintiff names Ohio Supreme Court Chief Justice Maureen O'Connor or Ohio Attorney General Mike DeWine in their official capacities, these claims are also barred by the Eleventh Amendment. "[A] suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office,' *i.e.*, against the State." *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008) (internal citations omitted).

Accordingly, Plaintiff's claims against the State of Ohio and Ohio Supreme Court should be dismissed.

C. *HCJFS*

Defendant HCJFS also moves the Court to dismiss Plaintiff's claims against them. First, Defendant HCJFS contends that Plaintiff is without standing to bring his § 1983 action, arguing that Plaintiff "acknowledges that no particular rights to a child have been determined for him." (Doc. 12, p. 7). Defendant HCJFS also argues that the "[c]omplaint filed by Plaintiff Haller does not allege that any type of duty to protect arose because of a state created risk for the unnamed child. Therefore, it fails to state a claim upon which relief may be granted under 42 USC 1983." *Id.* at 8.

The Supreme Court has set forth a three-part test for determining whether an individual has standing to bring a claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464 (1982). An individual has standing if he or she "(1) suffers an injury in fact that (2) is fairly traceable to the alleged misconduct and (3) redressable by the relief sought." *United States v. Perry*, 360 F.3d 519, 528 (6th Cir. 2004) (citing *Valley Forge*, 454 U.S. at 472). "[A]n action under 42 U.S.C. § 1983 inures only to the benefit of one whose own personal constitutional rights were violated." *Cramblit v. Fikse*, No. 91-4002, 1992 WL 307962, at *6 (6th Cir. 1992) *and cases cited therein*; *see also Bakari v. May*, No. 3:10-cv-250, 2011 WL 1743728, at *5 (S.D. Ohio May 6, 2011) (finding that plaintiff lacked standing to assert claims based on the rights of her son).

In the instant case, to the extent that Plaintiff bases his claim against HCJFS on "its failure to protect the welfare of a child," Plaintiff does not have standing to bring such a claim. (Doc. 1, ¶34). For example, Plaintiff argues that his "daughter has been permanently mentally and emotionally damaged by what the court allowed her mother to do to her." (Doc. 15, ¶ 28). He also contests HCJFS's failure to notify the state courts that he had filed a paternity motion with HCJFS prior to filing his parentage complaint in the Hamilton County Juvenile Court. (*See* Doc. 15, ¶25) ("An administrative application was filed with The Hamilton County Job and Family Services . . . and it was their job to present this in court. They were in court each time, and did not protect the child's best interest."). Because Plaintiff can only bring a § 1983 claim for violations of his own rights, he does not have standing to bring claims on behalf of his purported daughter.

To the extent that Plaintiff contends that HCJFS violated his rights, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Though Plaintiff has alleged that all named Defendants deprived him of due process and equal protection, he has not made any allegations that would suggest that HCJFS deprived him of any constitutional right.

    D. *HCBC*

Finally, the Court finds that Plaintiff's claims against Defendant Hamilton County Board of Commissioner ("HCBC") are also properly dismissed. As noted above, in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that are "enough to raise a right to relief above the speculative level. . . ." *Twombly,* 550 U.S. at 555. Plaintiff's complaint fails to meet this standard with respect to Defendant HCBC.

Plaintiff's complaint generally alleges that various Ohio Courts rendered decisions

he did not agree with. In that regard, Plaintiff alleges that HCBS is relevant to this matter "because of the systematic abuse and practice of conduct of the Defendants occurred and continue to occur on the property of and in the name of Hamilton County at Trial." (Doc. 1, ¶ 35). However, Plaintiff's complaint fails to state how or why the HCBC could be held liable to Plaintiff for allegedly violating his civil rights. Moreover, this Court has previously held that the HCBC cannot be held liable for judicial actions. *See Jackson v. Hamilton County Com'rs,* 76 F.Supp.2d 831, 836 (S.D. Ohio 1999) ("this Court simply cannot find that Defendant Commissioners can be held liable for a judicial determination . . . ."). Accordingly, Plaintiff's complaint fails to state a claim upon which relief can be granted with respect to HCBC.

### III. Conclusion

Accordingly, in sum, the Court does not have jurisdiction to consider Plaintiff's claims against the Judicial Defendants pursuant to the *Rookman-Feldman* doctrine and, alternatively, these Defendants are entitled to judicial immunity. Defendants the State of Ohio and the Ohio Supreme Court are entitled to Eleventh Amendment immunity. Further, Plaintiff does not have standing to bring his claims against HJCFS on behalf of his purported daughter and has otherwise failed to state a claim upon which relief can be granted. Finally, Plaintiff's complaint does not contain sufficient allegations to state a claim for relief against Defendant HCBC.

Plaintiff's remaining claims all arise under state law. The Court notes that it has original jurisdiction over this action because the complaint alleges causes of action under the laws and Constitution of the United States. However, the Court does not have diversity jurisdiction over plaintiff's state law claims as provided in 28 U.S.C. § 1332 because

complete diversity is lacking between the parties.  For a federal court to have diversity jurisdiction pursuant to section 1332(a), the citizenship of the plaintiff must be "diverse from the citizenship of each defendant" thereby ensuring "complete diversity."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531 (1967)).  Because Plaintiff's federal law claims should be dismissed, the Court no longer has original jurisdiction and should decline to exercise supplemental jurisdiction over the pendent state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Accordingly, Plaintiff's state law claims should be dismissed without prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motions to dismiss (Docs. 12, 13, 14) be GRANTED;

2. Plaintiff's motion for jury trial (Doc. 21) and motion for schedule (Doc. 22) be DENIED as MOOT; and

3. This matter be TERMINATED on the Court's active docket.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DANIEL HALLER, | Case No. 1:11-cv-291 |
| Plaintiff, | |
| vs. | Beckwith, J.<br>Bowman, M.J. |
| THOMAS LIPPS, et. al, | |
| Defendants. | |

## **NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).